An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-708

Filed 15 July 2026

McDowell County, No. 23CR290915-580

STATE OF NORTH CAROLINA

       v.

JESSE DWAYNE DAY

Appeal by defendant from judgment entered 24 July 2024 by Judge J. Thomas Davis in McDowell County Superior Court. Heard in the Court of Appeals 21 May 2026.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Sondra C. Panico, for the State.*

> *Anne Bleyman for defendant-appellant.*

ZACHARY, Judge.

Defendant Jesse Dwayne Day appeals from the trial court's judgment entered upon a jury's verdict finding him guilty of trafficking in opiates. On appeal, Defendant argues that the trial court erred by 1) admitting certain expert-witness testimony and 2) denying his motion to dismiss. After careful review, we conclude that the trial court did not err.

### I.    Background

On 5 September 2023, a McDowell County grand jury indicted Defendant for trafficking in opiates and possession with intent to sell or deliver a Schedule II controlled substance. On 6 September 2023, the charge of possession with intent to sell or deliver a Schedule II controlled substance was dismissed.

Defendant's case came on for jury trial on 23 July 2024. The evidence presented at trial tended to show the following:

On 25 April 2023, Defendant's probation officer, Officer Jordan Lombardo, traveled to Defendant's residence in order to serve a warrant on him for violating a condition of his probation. Officer Nikki Peters and Officer Christopher Poteat accompanied Officer Lombardo. When they arrived at Defendant's residence, they observed Defendant outside; the officers arrested Defendant and placed him in handcuffs. The officers conducted a pat-down of Defendant due to safety concerns, during which Officer Lombardo discovered "a black bag with a red tie that was tied to [Defendant's] belt loop [and] tucked in his waistband." The bag contained a large number of "yellow pressed pills." McDowell County Sheriff's Detective Richard Pittman took custody of the bag of pills. Based on his training and experience, Detective Pittman was of the opinion that the recovered drugs "were consistent with . . . pressed fentanyl pills."

The pills were delivered to the State Crime Lab. Karen Fox, a forensic scientist with the State Crime Lab, analyzed the pills and prepared a lab report based on the

results of her analysis. Ms. Fox, who was accepted at trial as an expert in forensic chemistry, testified that she counted the pills and analyzed them using a hypergeometric sampling plan. In Ms. Fox's opinion, the 68 pills contained a mixture of ANPP and fentanyl and weighed more than 4.00 grams. ANPP is an opiate used in the production of fentanyl.

At the close of the State's evidence, defense counsel moved to dismiss the charge and renewed his motion at the close of all evidence; the court denied the motion on both occasions.

On 24 July 2024, the jury returned its verdict finding Defendant guilty of trafficking in opiates. That same day, the trial court entered judgment sentencing Defendant to 70 to 93 months' imprisonment in the custody of the North Carolina Department of Adult Correction and imposing a $50,000 fine.

Defendant gave timely notice of appeal.

**II. Discussion**

Defendant argues that the trial court erred by 1) admitting certain expert-witness testimony and 2) denying his motion to dismiss.

**A. Expert-Witness Testimony**

Defendant first contends that "the trial court failed to perform its mandated gatekeeper role to determine if [Ms. Fox]'s opinion was reliable," and thus erred by admitting her expert-witness testimony. We disagree.

**1. Standard of Review**

"Whether expert witness testimony is admissible under Rule 702(a) is a preliminary question that a trial judge decides pursuant to Rule 104(a)." *State v. Piland*, 263 N.C. App. 323, 338, 822 S.E.2d 876, 887 (2018) (citation omitted). "In answering this preliminary question, the trial judge is not bound by the rules of evidence except those with respect to privileges. To the extent that factual findings are necessary to answer this question, the trial judge acts as the trier of fact." *State v. McGrady*, 368 N.C. 880, 892, 787 S.E.2d 1, 10 (2016) (extraneity removed). "As with other findings of fact, these findings will be binding on appeal unless there is no evidence to support them. The trial court then concludes, based on these findings, whether the proffered expert testimony meets Rule 702(a)'s requirements of qualification, relevance, and reliability." *Id.* at 893, 787 S.E.2d at 11 (citation omitted).

We review a trial court's ruling on the admissibility of expert-witness testimony for abuse of discretion. *State v. Corbett*, 269 N.C. App. 509, 552, 839 S.E.2d 361, 395 (2020), *aff'd*, 376 N.C. 799, 855 S.E.2d 228 (2021). "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *Id.* (extraneity removed).

### 2. Analysis

Rule 702(a) provides the circumstances under which expert-witness testimony is admissible:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
>
> (1)   The testimony is based upon sufficient facts or data.
>
> (2)   The testimony is the product of reliable principles and methods.
>
> (3)   The witness has applied the principles and methods reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2025).

"Rule 702(a) has three main parts, and expert testimony must satisfy each to be admissible." *Corbett*, 269 N.C. App. at 552, 839 S.E.2d at 395 (citation omitted). "First, the witness must be qualified as an expert, such that the witness is in a better position than the trier of fact to have an opinion on the subject." *Id.* (extraneity removed). "Second, the expert testimony must be relevant, and must assist the trier of fact to understand the evidence." *Id.* (extraneity removed). "In order to assist the trier of fact, expert testimony must provide insight beyond the conclusions that jurors can readily draw from their ordinary experience." *Id.* at 552–53, 839 S.E.2d at 395 (extraneity removed). "Third, and most pertinent to our analysis here, the expert testimony must be reliable." *Id.* at 553, 839 S.E.2d at 395.

With regard to the third prong—reliability—"[t]he primary focus of the inquiry is on the reliability of the witness's principles and methodology, not on the conclusions

that they generate." *McGrady*, 368 N.C. at 890, 787 S.E.2d at 9 (extraneity removed). "The precise nature of the reliability inquiry will vary from case to case depending on the nature of the proposed testimony"; it is well settled that "[i]n each case, the trial court has discretion in determining how to address the three prongs of the reliability test." *Id.* "The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability as it enjoys when it decides *whether* that expert's relevant testimony is reliable." *Id.* (extraneity removed).

In the present case, Defendant asserts that the trial court neglected to properly evaluate the reliability of Ms. Fox's testimony, as it is tasked with doing in its role as gatekeeper. In sum, Defendant argues that "Ms. Fox did not show that she applied the relevant analytical principles and methods reliably to the facts of the case."

Defendant was charged with and convicted of trafficking in opiates. Our General Statutes provide that any person who "possesses four grams or more of [an] . . . opiate . . . or any mixture containing such substance" is guilty of this charge. N.C. Gen. Stat. § 90-95(h)(4). Fentanyl and ANPP (also known as "[f]entanyl immediate precursor chemical") are opiates. *Id.* § 90-90(2)(h), (h1).

At trial, defense counsel requested a voir-dire hearing to determine whether "proper lab protocols . . . were followed in this case when testing" the 68 pills that officers discovered in Defendant's possession. During voir dire, Ms. Fox testified that there were three different types of analytic-sampling plans used at the State Crime Lab: administrative, threshold, and hypergeometric.

Ms. Fox testified that the pills were "homemade," "consistent in color and size," and contained imprints "of T-189." Because of the large number of pills, Ms. Fox selected the hypergeometric sampling plan. She did not choose administrative sampling, which is more appropriate when "deal[ing] with pharmaceutical grade pills." She also declined to use threshold sampling, which is best utilized when the substance being tested "contains non-pharmaceutical items and the amount of material present within the population does not meet a statutory threshold."

On direct examination, Ms. Fox testified that the decision of which sampling plan to use was "discretionary" but based on laboratory guidelines. She explained that "based on those guidelines" and her "training and experience," she determined that hypergeometric sampling was the most appropriate plan in this case:

> Q. So can you explain to the jury what this hypergeometric sampling plan is in general?
>
> A. In general, it's when we have a large quantity of tablets or even single plastic bag corners.
>
> It's not practical for us to work [with] every single tablet or bag, so we use a statistical calculator so we can make the statement that at least 90 percent of the total population that we received with 95 percent confidence all contain X.
>
> . . . .
>
> Q. And is this sampling plan accepted in the forensic science and criminal law field?
>
> A. It is, internationally.

- 7 -

Ms. Fox further testified that hypergeometric sampling was the most appropriate method of testing "because it takes into account a higher percentage of the population."

Following the hypergeometric-sampling protocol, Ms. Fox determined that the appropriate sample size in this case was 24 of the 68 pills. She then weighed certain groups of the pills. The 24 randomly selected pills weighed 3.94 grams, plus or minus 0.29 grams. Ten percent of the 68 pills—six pills—were not tested or weighed, consistent with the hypergeometric plan. The remaining 38 pills weighed 6.17 grams, plus or minus 0.06 grams. Ms. Fox visually inspected the 68 pills and after determining them to be "all similar in color and shape as well as the imprint," concluded that they constituted "one population."

She then tested the 24 sample pills, which were all "found to contain ANPP and fentanyl." As explained by Ms. Fox, hypergeometric sampling allowed her to report "the chemical components" of the pills in "the 3.94 grams"—the 24 sample pills—"as well as the additional 6.17 grams"—the 38 pills. Using the hypergeometric plan protocol, Ms. Fox's analysis demonstrated with 95% confidence that at least 90% of the population of 68 pills—that is, 62 pills—contained ANPP and fentanyl. The 62 pills weighed 10.11 grams, more than "the minimum statutory threshold to qualify for trafficking [of] 4.00 grams." Ms. Fox recorded the results of her analysis in a lab report, which was checked by a trained reviewer. This report was admitted into evidence as State's Exhibit No. 6 and published to the jury.

In evaluating an expert witness's reliability, the trial court's "primary focus . . . is on the reliability of the witness's principles and methodology, not on the conclusions that they generate." *McGrady*, 368 N.C. at 890, 787 S.E.2d at 9 (extraneity removed). Moreover, "[i]n each case, the trial court has discretion in determining how to address the three prongs of the reliability test." *Id.* Importantly, "any deviation that" a Rule 702(a) witness might take "from the established methodology [goes] to the weight of his testimony and not the admissibility of the testimony." *State v. Hunt*, 249 N.C. App. 428, 435, 790 S.E.2d 874, 880, *disc. review denied*, 369 N.C. 197, 795 S.E.2d 206 (2016).

Here, the trial court properly conducted a voir-dire hearing, in which it considered testimony from Ms. Fox as well as the arguments of counsel, and did not abuse its discretion in determining that Ms. Fox's "principles and methodology" were sufficiently reliable for her to testify to the jury. *McGrady*, 368 N.C. at 890, 787 S.E.2d at 9; *see also State v. Gray*, 259 N.C. App. 351, 357, 815 S.E.2d 736, 741 (2018) (concluding that the defendant's attack on the reliability of the particular testing process utilized by a crime lab was unfounded "because a proper Rule 702(a) foundation was established, [and] any procedural shortcomings of the . . . [c]rime [l]ab, had they been raised during trial, would [have gone] to the weight of [the witness]'s expert opinion, not its admissibility").

"While Rule 702 imposes a special obligation upon a trial judge to ensure that any and all scientific testimony is not only relevant, but reliable," we note that "the

- 9 -

trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *State v. Hunt*, 250 N.C. App. 238, 247–48, 792 S.E.2d 552, 560 (2016) (extraneity removed). "Rather, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof continue as the traditional and appropriate means of attacking shaky but admissible evidence." *Gray*, 259 N.C. App. at 355, 815 S.E.2d at 740 (extraneity removed).

Accordingly, Ms. Fox's testimony was (1) "based upon sufficient facts or data" and was (2) "the product of reliable principles and methods," which (3) Ms. Fox "applied . . . reliably to the facts of the case." N.C. Gen. Stat. § 8C-1, Rule 702(a). Thus, the trial court did not err in admitting Ms. Fox's testimony. Defendant's arguments to the contrary are overruled.

### B. Motion to Dismiss

Defendant next asserts that the trial court erred in denying his motion to dismiss on the basis of insufficient evidence. We disagree.

### 1. Standard of Review

Upon a criminal defendant's motion for dismissal, the question for the trial court "is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense." *State v. Miller,* 292 N.C. App. 519, 521–22, 898 S.E.2d 792, 795 (2024) (citation omitted), *aff'd*, 387 N.C. 348, 912 S.E.2d 761 (2025). "Substantial evidence is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Id.* at 522, 898 S.E.2d at 795 (citation omitted).

"When determining whether substantial evidence exists, the evidence must be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom." *State v. Thomas*, 300 N.C. App. 588, 592, 921 S.E.2d 862, 866 (2025) (extraneity removed), *disc. review denied*, 389 N.C. 15, 924 S.E.2d 833 (2026). "[I]f the record developed at trial contains substantial evidence, whether direct or circumstantial, or a combination[,] the case is for the jury and the motion to dismiss should be denied." *State v. Gillard*, 386 N.C. 797, 832, 909 S.E.2d 226, 258 (2024) (extraneity removed). "Moreover, both competent and incompetent evidence that is favorable to the State must be considered by the trial court in ruling on a defendant's motion to dismiss." *State v. Osborne*, 372 N.C. 619, 626, 831 S.E.2d 328, 333 (2019) (citation omitted).

On appeal, we review the "denial of a motion to dismiss de novo. Under a de novo review, this Court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Miller*, 292 N.C. App. at 521, 898 S.E.2d at 795 (extraneity removed).

### 2. Analysis

In the case at bar, Defendant was charged with trafficking in opiates by possession, which required the State to prove that he "possesse[d] four grams or more of [an] . . . opiate . . . or any mixture containing such substance." N.C. Gen. Stat. § 90-95(h)(4). As explained above, fentanyl and ANPP (also known as "fentanyl immediate

precursor chemical") are opiates. *Id.* § 90-90(2)(h), (h1).

Defendant asserts that "Ms. Fox's assumptions that there was an additional 6.17 grams containing a quantity of fentanyl that could be added to the 3.94 grams of analyzed pills was unreliable," and as such, "[i]f the additional 6.17 grams that was assumed to contain a quantity of fentanyl was excluded, there would not have been sufficient evidence of the threshold trafficking weight." This argument is inapt.

Defendant's challenge to the denial of his motion to dismiss is grounded in his first argument under Rule 702, which we have rejected. Thus, we disagree with the underlying premise of Defendant's argument.

Moreover, as our Supreme Court explained in *Osborne*, "for purposes of examining the sufficiency of the evidence to support a criminal conviction, it simply does not matter whether some or all of the evidence contained in the record should not have been admitted." *Osborne*, 372 N.C. at 630, 831 S.E.2d at 335. Rather, "when evaluating the sufficiency of the evidence, all of the evidence, regardless of its admissibility, must be considered in determining the validity of the conviction in question." *Id.*

> For that reason, a reviewing court errs to the extent that it determines whether the evidence suffices to support a defendant's criminal conviction by ascertaining whether the evidence relevant to the issue of the defendant's guilt should or should not have been admitted and then evaluating whether the admissible evidence, examined without reference to the allegedly inadmissible evidence that the trial court allowed the jury to hear, sufficed to support the defendant's conviction.

*Id.* at 630, 831 S.E.2d at 336.

Therefore, "the only thing that remains for us to do . . . is to determine whether, when analyzed in accordance with the applicable legal standard, the evidence adduced at [D]efendant's trial sufficed to support [his] conviction." *Id.* at 631, 831 S.E.2d at 336. Here, the State presented substantial evidence that Defendant possessed more than 4.00 grams of opiates or an opiate mixture. This evidence was sufficient to support his conviction for trafficking in opiates. *Id.* Accordingly, the trial court did not err in denying Defendant's motion to dismiss.

## III.    Conclusion

For the foregoing reasons, we conclude that the trial court did not err by admitting expert-witness testimony or by denying Defendant's motion to dismiss.

NO ERROR.

Judges CARPENTER and MURRY concur.

Report per Rule 30(e).